## Sarah Willis *v.* Joseph Willis's Administrator.

1. Though the fact of notice of the time and place of holding an inquisition *de lunatico* having been served on the defendant may not appear on the record, it cannot be treated as a nullity in a collateral proceeding.

2. The record of the proceeding *de lunatico* is *primâ facie* evidence to impeach the acts of the lunatic before the finding, and within the period during which he was found to be a lunatic.

3. The enlargement of the duties of an auditor beyond the duty assigned to him by his appointment, by the assent of an attorney, whereby the identity and validity of his client's claim, which did not fall within the scope of the auditor's original authority, was merged in that of other persons, does not bind the client without his express consent, as such action of the attorney is not in the usual routine of his powers and duties as such.

4. Where, under such circumstances, an auditor reported that a certain single bill was a nullity, in consequence of the insanity of the obligor, the report was held not to be conclusive on the obligee, and that he had an undoubted right to bring his action upon the bill.

ERROR to the Common Pleas of Greene.

*Oct.* 26. Sarah Willis brought an action of debt against the administrator of her father, Joseph Willis, upon a single bill for $200, dated 5th October, 1835, and payable on the death of her mother, with interest. Having proved the execution of the bill, and the death of her mother in June, 1846, the plaintiff rested.

The defendant offered in evidence the record of proceedings upon a writ *de lunatico*, which was sued out against his intestate in March, 1839. The commission was directed to two persons, direct-

ing them to inquire by the oaths of six lawful men ; the inquisition was signed by ten jurors. It did not appear what, if any, notice was given to the alleged lunatic of the time and place of holding the inquisition. The finding of insanity by the inquisition seems to have extended back over some fourteen years, during which it was found that the alleged lunatic enjoyed long and frequent lucid intervals. The proceedings were confirmed by the Court in June, 1839. The admission of this record in evidence was excepted to by the plaintiff.

The defendant then offered in evidence the report of the auditor, appointed, upon the confirmation of the sale of the intestate's real estate, "to ascertain what, if any, advancements were made by the intestate in his lifetime to his heirs ;" which appointment was enlarged by the attorneys at the hearing into an inquiring into the sanity of the maker, and the consideration of this and other like notes or bills, and which report was confirmed in June, 1845. By that report the auditor found that this and other like bills were nullities, and were not to be paid by the administrator. The admission of this evidence was also excepted to by the plaintiff.

It appeared that the intestate had nine children, to some of whom, as he alleged, he had made advancements, and given notes to others, to equalize them with those advanced.

The Court below (GILMORE, President) charged the jury as follows :

" You will perceive that the power of the auditor was enlarged by the parties, after appearing before him and agreeing to permit him to inquire into and determine the true nature and consideration of the note. You have heard his report and decision of the same read to you. The Court charge you that this is binding and conclusive upon the parties to this suit. Mr. Downey, the attorney-at-law of the plaintiff, as he still is, had the note in his hands then for collection, and had authority to bind his client by this submission. Your verdict will therefore be for the defendant."

Verdict accordingly. The following errors were assigned here :

1. The Court erred in admitting the inquisition of lunacy.

2. In admitting the auditor's report as an evidence of submission.

3. In charging that the power of the auditor was enlarged, and that there was a submission to him of the validity of the note in suit, other than in pursuance of his appointment as auditor.

4. In charging that an attorney can submit the cause of his client to an amicable submission, without his consent.

*Veech,* for the plaintiff in error.

1. This inquisition was void for want of notice; § 6, Act 13th June, 1836, relating to lunatics: Brown *v.* Hummel, 6 Barr, 91. Again, which of the ten jurors who signed the inquisition, were the six directed to hold it? That was ground to quash it: 2 Hill, S. C. 506, 6 Greenl. 140, 3 Johns. 252, 2 Southard, 687, 3 Day, 287. The confirmation of it was a nullity.

2. 3. 4. There was no submission. If those bills were claimed as advancements, it was proper to prove their execution and the purpose of giving them, and for that the auditor had not power under his appointment. It was necessary to enlarge it, and error to admit the report as evidence of submission.

*Sayers,* contrà.

1. The Act requires not less than six nor more than twelve jurors.

2. 3. 4. The agreement of an attorney to refer binds his client: Somers *v.* Balabrega, 1 Dall. 164, Gable *v.* Hain, 1 Pa. R. 267, Huston *v.* Mitchell, 14 S. & R. 309, Wilson *v.* Young, 9 Barr, 101.

The opinion of this Court was delivered by

COULTER, J.—It is stated in the paper-book that no notice was given to Joseph Willis, or any one on his behalf, of the time and place of holding the inquisition; but, although the fact of notice having been served may not appear on the record, we cannot, in this collateral proceeding, regard it as a nullity, because the Court would not have appointed a committee in pursuance of the finding, or confirmed the proceeding, unless their order with respect to notice had been complied with. Moreover, the direction in the statute is that the Court shall make such orders respecting notice of the execution of the commission to *the party,* or to some of his near relations or friends, as the said Court shall deem advisable; and it is not alleged that notice was not given to any near relation, which notice would fulfil the requirement of the statute. The record of the proceedings in lunacy was therefore evidence to impeach the acts of the lunatic before the finding of the inquisition, and within the period during which he was found to be lunatic, on the authority of Hutchinson *v.* Sandt, 4 Rawle, 244. But it was *primâ facie* evidence only, not conclusive.

The instruction of the Court to the jury, in relation to the

second exception, was, however, clearly erroneous.   The enlargement of the power of the auditor, beyond the legitimate duty assigned to him by his appointment, is evidence only by his own report.   The appointment by the Court reads thus : " John Phelan appointed auditor to ascertain what, if any, advancements were made by Joseph Willis in his life to his heirs."    The auditor reports, " that Downey and Moore, who were for the noteholders, and Minor and Sayers, who were resisting the payment of them, agreed that the only question before the auditor shall be the validity of certain notes held by some of the heirs of Joseph Willis, and what, if any, advancements were made to the heirs who have no notes ; and, having heard the proof of the parties, he was of opinion that Joseph Willis was of unsound mind and incapable of making any contract that would bind him ; and consequently the several notes made to his children were nullities, and were not to be paid by the administrator."    The Court instructed the jury that this report was binding and conclusive on the parties to this suit. Downey was the attorney for the plaintiff in this action, and, at the time the auditor sat, had this note in his hand for collection. It is certain that an attorney may submit his client's cause to arbitration, Wilson v. Young, 9 Barr, 101, because that is an incident to the progress of the cause, and within the scope of his powers in the management of the action.   But when a note is put into the hands of an attorney for collection, the understanding of the client is that suit shall be instituted in the usual manner and the validity of that identical note tested in the customary way, according to the course of proceedings in Court ; one of which is the trial by arbitration.   The proceeding before the auditor is entirely out of the usual track, and beyond the customs of the profession.   It is not a submission of a cause pending in court ; it is not a submission to arbitration at common law ; but a mongrel proceeding, the like of which, I apprehend, was never heard of before, in which the interest of the plaintiff in this cause is mingled up and blended with other matters, of which she was not a participator.   The identity and validity of her claim were merged in those of other persons, which proceeding could not bind her without her express consent, as it was not in the usual routine of the powers and duties of an attorney at law.   But the submission was as to " certain notes held by some of the heirs," and the auditor reports that " the several notes held by his children were nullities."   The note or single bill,

on which this suit is instituted, is not described, either in the alleged submission or in the report.

The inquisition of lunacy, although not in the paper-book, was read at bar, and finds that although when witches were mentioned the alleged lunatic became outrageous, he had long and many lucid intervals, when he was tranquil and sensible. Now the auditor does not report what evidence was before him of the lunacy; it is probable, however, that it was the inquisition of lunacy confirmed by the Court, and he reports that Joseph Willis was of unsound mind and therefore the several notes given to his heirs were nullities, without noticing, and probably without inquiring or thinking whether this single bill, or any of them, was given in the long lucid intervals enjoyed according to the inquisition. The inquisition, as read at bar, is a medley of odd and incongruous statements and things, and I can only account for its being confirmed by the Court, from the fact that such documents are rarely read, but confirmed by the Court on motion of the attorney. It is possible, but not very probable, that the auditor heard other testimony, but it is most probable that he considered it conclusive. Be that as it may, the report of the auditor was not conclusive upon the parties to this suit. The plaintiff had an undoubted right to bring her action, and to rebut the inquisition of lunacy by testimony, and even to rest her cause before the jury, on the presumption that a man who had conducted his business for fourteen years, during which the inquisition reaches back, and who had frequent and long lucid intervals, did execute this single bill in a lucid interval, and that it was valid. But the Court cut her off from all hope by the peremptory charge that the report of the auditor was conclusive.

Judgment reversed, and *venire de novo* awarded.